1  Brian M. Grossman (SBN 166681)
2  Bethany R. Burrill (SBN 294088)
   TESSER | GROSSMAN LLP
3  11990 San Vicente Blvd., Ste. 300
   Los Angeles, CA  90049
4  Tel. : (310) 207-4558
5  Fax : (424) 256-2689
   Email : brian@tessergrossman.com
6          bethany@tessergrossman.com

7
   Attorneys for Plaintiffs
8  ADRIAN COMSTOCK,
9  COMSTOCK REALTY PARTNERS, LLC, and
   COMSTOCK REALTY PARTNERS I, LLC
10

11              **UNITED STATES DISTRICT COURT**

12              **CENTRAL DISTRICT OF CALIFORNIA**

13

14 | ADRIAN COMSTOCK, an individual; ) | Case No.  8:21-cv-958
   | COMSTOCK REALTY PARTNERS,        )
15 | LLC, a Delaware limited liability )
   | company; COMSTOCK REALTY         ) | **COMPLAINT FOR:**
16 | PARTNERS I, LLC, a Delaware      )
   | limited liability company,        )
17 |                                  ) | 1.  **COPYRIGHT**
18 |            Plaintiffs,           )        **INFRINGEMENT**
19 |     v.                           ) | 2.  **UNFAIR BUSINESS**
20 |                                  )        **PRACTICES**
   | PENWOOD REAL ESTATE              )
21 | INVESTMENT MANAGEMENT,           )
   | LLC, a Connecticut limited liability )
22 | company; PENWOOD SELECT          )
23 | INDUSTRIAL PARTNERS IV, L.P., a  )
   | Delaware limited partnership;    )
24 | WESTERN REALCO, LLC, a           )
25 | California limited liability company; )
   | BASTIEN AND ASSOCIATES           )
26 | INCORPORATED., a California      )
27 |                                  )
28 |                                  )

**COMPLAINT**

Corporation, and DOES 1 through 50, )
inclusive, )
)
Defendants. )

## THE PARTIES

1. Plaintiff Adrian Comstock ("Comstock") is, and at all times material hereto was an individual residing in Los Angeles County, California.

2. Plaintiff Comstock Realty Partners ("CRP") is, and at all times material hereto was a limited liability company organized under the laws of the State of Delaware, with its principal place of business located in Los Angeles County, California, and does business in the County of San Bernardino, State of California. CRP is a single member limited liability company with Comstock being the sole member.

3. Plaintiff Comstock Realty Partners I ("CRP I") is, and at all times material hereto was a limited liability company organized under the laws of the State of Delaware, with its principal place of business located in Los Angeles County, California, and does business in the County of San Bernardino, State of California. CRP I is a single member limited liability company with Comstock being the sole member. CRP and CRP I are related entities.

4. Plaintiffs are informed and believe, and based thereon allege that at all times material hereto, defendant Penwood Real Estate Investment Management, LLC ("Penwood LLC") is, and at all times material hereto was, a limited liability company organized under the laws of the State of Connecticut, with its principal place of business located in West Hartford, Connecticut. Plaintiffs are also informed and believe, and based thereon allege that at all times material hereto, Penwood does business in the County of San Bernardino, State of California.

5. Plaintiffs are informed and believe, and based thereon allege that at all times material hereto, defendant Penwood Select Industrial Partners VI, L.P. ("PSIP")

is, and at all times material hereto was, a limited partnership organized under the laws of the State of Delaware, with its principal place of business located in West Hartford, Connecticut. Plaintiffs are also informed and believe, and based thereon allege that at all times material hereto, PSIP does business in the County of San Bernardino, State of California Plaintiffs are further informed and believe, and based thereon allege that at all times material hereto, PSIP was an investment vehicle owned and controlled by Penwood. Penwood LLC and PSIP will collectively be referred to herein as "Penwood" and/or "Penwood Defendants").

6. Plaintiffs are informed and believe, and based thereon allege that at all times material hereto, defendant Western Realco LLC ("Western Realco") is, and at all times material hereto was, a limited liability company organized under the laws of the State of California, with its principal place of business located in Orange County, California.

7. Plaintiffs are informed and believe, and based thereon allege that at all times material hereto, defendant Bastien & Associates, Inc. ("Bastien") is, and at all times material hereto was, a corporation organized under the laws of the State of California, with its principal place of business located in Orange County, California.

8. Plaintiffs are informed and believe, and based thereon allege that at all times material hereto, the parties' transactions and the acts complained of herein occurred in the County of San Bernardino, and involved a real property located at 1509 S. Grove Ave., Ontario, California (the "Grove Property").

9. The true names and capacities of Does 1 through 50, inclusive, are unknown to Plaintiffs, who therefore sues said defendants by fictitious names. When the true names and capacities of the Doe Defendants are known, Plaintiffs will seek leave to amend this Complaint. Plaintiffs are informed and believe, and based thereon allege that such Defendants, and each of them, took some part in the acts and omissions alleged herein, and, as a direct and proximate result thereof, have incurred liability to Plaintiffs for the relief prayed for herein. Each non-specific reference in

this Complaint to "Defendant" or "Defendants" refers to Penwood LLC, PSIP, Western Realco and to all Doe Defendants sued under fictitious names.

10. Plaintiffs are informed and believe, and based thereon allege that the Defendants are, and at all times material hereto were the agents, servants, officers, employees, co-venturers, co-conspirators, representatives or partners of each of the other Defendants herein, and, in doing and taking part in the things and acts herein alleged, were acting within the course and scope of such authority conferred upon that party by consent, approval, or ratification, whether such authority was actual or apparent.

11. Plaintiffs are informed and believe, and based thereon allege that the Defendants, at all times material hereto, unlawfully conspired and acted in concert and participated with one or more of the remaining Defendants in committing and performing the acts and conduct alleged herein, for the express and intended purpose of committing or performing the acts and conduct alleged herein, all to the damage and detriment of Plaintiffs.

**JURISDICTION AND VENUE**

**GENERAL FACTUAL ALLEGATIONS**

<u>Creation of Plaintiffs' Development Ideas and Site Plan for the Grove Property</u>

12. Comstock is commercial and industrial developer, who specializes, among other things, in developing undeveloped land into industrial buildings. Comstock operates CRP and CRP I interchangeably as the face of his development company. Comstock typically uses CRP to interface with investors and vendors, and CRP I to hold the company's bank account, pay for company expenses, including due diligence, site plans and land studies for a project, and to enter into certain contracts. However, Comstock operates both companies, including their assets, as a single enterprise.

4

13. On or about November 15, 2014, Comstock discovered the Grove Property was for sale. The Grove Property was an undeveloped plot of land at that time. Comstock had a unique vision to develop the Grove Property into an industrial park. Pursuant to this vision, Comstock spent many months conducting extensive market research, conducting surveys of other competitive buildings and properties in the surrounding market, collaborating with a team of architects and leasing and sale brokers, making multiple site visits to understand the site, its access and its measurements, conducting in-depth due diligence, and performing multiple studies of the project's logistical mechanisms, including but not limited to truck turning radiuses, grading and drainage plans, environmental review, market optimized specifications for utility, design, elevation, building clear height and optimal shapes and sizes for the buildings and square footage percentages for office space within each building. Comstock even studied minute details such as ideal fire suppression systems that were most attractive to potential tenants or users of the buildings to ensure their development plans would have maximum success on the market.

14. Comstock invested a substantial amount of time, money and resources to obtain and develop this valuable, proprietary information, which was not apparently known to the public and was kept confidential, into useable information that could be incorporated into architectural designs and site plan for the development. Indeed, Comstock utilized his expertise to coalesce this information into a unique vision, and created an ideal building and traffic-flow design to maximize usable space and appeal to the local market's demands.

15. To that end, Comstock hired an architect, John Cataldo from John Cataldo & Associates, Inc. ("Cataldo") to draw Comstock's ideas and designs into a detailed site plan for the Grove Property, which Comstock intended to present to equity investors who sought to co-invest in the Grove Property with Comstock. Comstock invested great time and expense with Cataldo to refine the site plan into a valuable, lucrative asset for the Grove Property project. After creating and working

through several draft variations of the development and site plan, Comstock narrowed down his ideas and work product to create a custom Master Site Plan (the "Site Plan") that maximized both the development's functionality and profitability. The Site Plan was both unique and confidential in nature. All work that Cataldo performed for Comstock, including but not limited to the Site Plan, was on a work-for-hire basis and owned by Plaintiffs collectively. In addition, Cataldo executed an assignment assigning the copyrights to the architectural works to Plaintiffs.

16. A developer's site plan, like Plaintiffs' Site Plan here, is similar to a work of art because it is what determines the success of a particular development. For this reason, Plaintiffs expended considerable time and resources to design and develop a novel Site Plan that creatively utilized the undeveloped land in such way that ensured a highly successful and profitable investment. Plaintiffs are informed and believe, and based thereon allege that, prior to the creation of Plaintiffs' Site Plan no other developer had contemplated or created a site plan for the Grove Property that came close to matching the lucrative and innovative design that Plaintiffs had developed. Plaintiffs' Site Plan was an original design of architecture and thus subject to copyright protection.

<u>Plaintiffs Enter Into Contract To Purchase the Grove Property</u>

17. Comstock used CRP I as the vehicle to enter into a Purchase and Sale Agreement ("PSA") to purchase the Grove Property. Plaintiffs are informed and believe, and based thereon allege that the sellers of the Grove Property were Dorothy V. Cauffman, as Trustee of the Dorothy V. Cauffman Trust, dated November 4, 1992, Carol Lynn Difilippo, as Trustee of the Carol Difilippo 1998 Trust, James Edward Cauffman, an individual, John Steven Cauffman, as Trustee of the John Steven Cauffman Separate Property Trust, dated May 31, 2011, and Jeffrey Allen Cauffman, an individual (collectively, the "Sellers"). Austin Hill ("Hill") and Jeff Smith ("Smith") from Lee & Associates acted as the Sellers' brokers. The PSA required Plaintiffs to deposit $100,000 (the "Initial Deposit") into escrow.

18. Around this same time, Comstock began negotiating the terms of an Exclusive Listing Agreement with Smith and Hill, whereby Lee & Associates would serve as CRP I's agent to market and list the Grove Property. The intent in negotiating such an agreement early on was to include Lee & Associates as part of Comstock's team to create a successful project.

19. Comstock's development ideas and designs for the Grove Property were summarized in a confidential offering memorandum, which included a summary of Comstock's development and design plans, the Site Plan, a summary of Comstock's business plan, market data, comps, cost models and proformas for the investment opportunity (collectively, "Offering Memorandum"). Each page of the Offering Memorandum, including the Site Plan, was marked "Confidential." The Offering Memorandum was created to present to investors who were interested in forming a joint venture with Comstock to invest in the Grove Property project. The confidential Offering Memorandum was otherwise not disclosed to the public generally or to persons in the industry.

20. During this time, Comstock set in motion a calculated plan to ensure a successful development project by engaging, paying for, and completing technical land surveys, legal review of the Grove Property's title, survey of environmental contamination, investigation of geotechnical soil capabilities to withstand the construction and placement of industrial buildings, design and placement of underground drainage and stormwater treatment areas and survey of wildlife and habitat endangerment. Comstock also actively met and worked with Ontario City officials, including the Director of City Planning, the Building and Safety Department, the Fire Department and Engineering Department, regarding the Grove Property development project to satisfy the requisite fees, permit requirements, and to discuss the nuances of the Site Plan and site details including street right-of-way and utilities connections, and any other requirements needed to perfect Plaintiffs' Site Plan and set in motion the final approvals needed from the City to develop the

architectural plans. Comstock further compiled the technical specifications he developed into a bid-package to provide information to reputable general contractors necessary to obtain their cost estimates to build the project so that such estimates could be included in Comstock's architectural plans. All of this due diligence and information developed therefrom was collectively owned by Plaintiffs, was generally not known to the public, was kept confidential and was creatively and uniquely incorporated by Plaintiffs into their overall Site Plan and architectural designs for the Grove Property development.

<u>Submission of Site Plans and Offering Memorandum to Penwood</u>

21.     On or about March 31, 2015, Comstock presented his confidential Offering Memorandum and Site Plan to Penwood, a private equity firm, as a co-investment opportunity to form a joint venture with Plaintiffs to invest in and develop the Grove Property project. At the meeting, Penwood showed a particularly strong interest in Comstock's Offering Memorandum and Site Plan from the outset of the meeting, and went straight into discussing the details of the Site Plan, the logistics of Comstock's design and the details of the investment opportunity. During the meeting, and upon Penwood's request, Comstock stated he would be willing to provide more detailed information about the development project to Penwood on a confidential basis so that they could decide whether they wanted to become an equity investor in the deal.

22.     Comstock's initial submission to Penwood was made in confidence, and with the understanding that if Penwood liked Comstock's ideas then they would compensate Plaintiffs by way of co-investing in the Grove Property project with Plaintiffs through a joint venture, which would pay Plaintiffs' construction management fees and a percentage of the profits based upon the financial performance of the project. Comstock's Offering Memorandum and Site Plan ideas were favorably received by Penwood, and Penwood requested Comstock to submit further details about the project, including documentation, drawings, plans, specifications, and other

information so that Penwood could begin their due diligence process for the investment deal.

23. Before delivering additional materials to Penwood, and as part of Comstock's typical process of continually refining his ideas, Comstock further refined his Offering Memorandum and Site Plan to provide additional design features, functionality benefits and profitability to the investment. In or around April 2015, Comstock submitted his updated Offering Memorandum and Site Plan to Penwood. Again, each page of the Offering Memorandum was clearly marked "Confidential." This subsequent submission was made in confidence, and with the understanding that if Penwood liked Comstock's ideas then it would compensate Plaintiffs as described above.

24. From April 2015 to May 2015, Penwood continued to be very enthusiastic about the investment opportunity. Indeed, Penwood continued to request and participate in many telephonic and email exchanges with Comstock and CBRE to discuss the intricate details of the Site Plan, the logistics of the development and the overall investment opportunity. Comstock continued to provide Penwood with the additional information it requested. All information and ideas that were exchanged with Penwood were made in confidence.

25. During this time, Comstock received proposals and expressions of interest from other potential investors who wanted to co-invest in the Grove Property project with Plaintiffs. However, Comstock gave Penwood preference on the deal because it was already so involved and expressed such strong interest in doing the deal with Plaintiffs.

26. Plaintiffs are informed and believe, and based thereon allege that on or about May 20, 2015, Ben Wagner ("Wagner"), a mortgage broker from CBRE, informed Penwood that Comstock was anticipating to receive a competitive proposal from another investor, and that he needed to pick a direction with respect an equity partner for the joint venture by May 22, 2015, as that was when, according to the

purchase and sale agreement Plaintiff entered, Plaintiffs' Escrow Deposit was scheduled to become non-refundable.

27. On or about May 21, 2015, Comstock attended a teleconference with Penwood among other attendees. Plaintiffs are informed and believe, and based thereon allege that the following individuals attended the conference call: Richard Chase ("Chase"), co-founder of Penwood and head of acquisitions, Zach Flynn ("Flynn"), who also attended on behalf of Penwood, Comstock and Craig Burger on behalf of Plaintiffs, Plaintiffs' mortgage brokers and the sellers' brokers. During the conference call, Comstock stated that he needed to know whether Penwood was willing to invest in the deal because Plaintiffs were scheduled to go non-refundable the following day. Comstock also stated that Plaintiffs would not agree to go non-refundable unless they received assurances from Penwood that they intended to go forward and invest in the project with Plaintiffs. In response, Chase, who spoke on behalf of Penwood, stated that he liked the investment opportunity and Plaintiffs' Site Plan, that Penwood was interested in investing in the deal with Plaintiffs and that he would recommend the deal be approved by Penwood's investment committee ("Committee"). When pressed on this point by Comstock, Chase assured Comstock that the Committee had never disapproved Chase's recommendations in the past.

28. Based upon Chase's assurances that Penwood intended to invest in the deal with Plaintiffs, Comstock agreed to let Plaintiffs' Initial Deposit go non-refundable on May 22, 2015. As a condition to going non-refundable, Plaintiffs were also required to make a second non-refundable deposit in the amount of $100,000. Thus, Plaintiffs put $200,000 at stake in escrow based upon the parties' understanding that Penwood was proceeding with the deal.

29. At this time, the Closing Date for escrow was set for July 8, 2015. Plaintiffs are informed and believe, and based thereon allege that Penwood was informed and had knowledge that the Closing Date was July 8, 2015.

///

10

## Penwood Issues a Signed Term Sheet and Proposed Operating Agreement
## to Form a Joint Venture With Plaintiffs for the Grove Property Project

30. Plaintiffs are informed and believe, and based thereon allege that Brian Halpern, Plaintiffs' lead mortgage broker from CBRE, and Wagner had a very familiar relationship with Penwood, having arranged numerous prior investments for them in the past. On or about May 30, 2015, Halpern, who was in regular contact with Chase, informed Comstock that Penwood does not issue a Term Sheet "unless they are pretty much there" in terms of approving the deal.

31. On the same day, Penwood issued a Term Sheet to Plaintiffs, outlining the terms of the joint venture between Plaintiffs and Penwood for the Grove Property investment. Pursuant to Penwood's Term Sheet, the members of the joint venture were to be PSIP and Comstock Realty Partners. The Term Sheet also nearly mirrored Plaintiff's original proposed investment structure, with a 97/3 equity investment split with Penwood paying 97% of the total required equity investment and Plaintiffs paying 3%, a compounded preferred return of 9 percent to the joint venture members on their unrecovered capital contributions, and a 70/30 profit split between Penwood and Plaintiffs respectively once the original equity and preferred return was paid current.

32. Plaintiffs made it known to Penwood that they accepted each of the terms set forth in Penwood's Term Sheet, and agreed that Penwood's terms would become the general agreement between the parties for their joint venture.

33. At all material times herein, Plaintiff was ready, willing and able to perform each of the terms required of them under the Term Sheet.

34. Plaintiffs are informed and believe, and based thereon allege that shortly after Penwood issued the Term Sheet, on or about June 2, 2015, Penwood informed Halpern that it anticipated to be through Committee with approval for a cash close on the Grove Property the first week of July, which was on schedule with the July 8, 2015 Closing Date. Halpern, in turn, conveyed this information to Comstock.

35. From on or about May 22, 2015 to July 7, 2015, and pursuant to the parties' understanding described above, Comstock and Penwood continued to engage in extensive discussions and exchanges of information regarding Plaintiffs' Site Plan, drawings and development plans for the project. At all times relevant herein, all information that was disclosed to and exchanged with Penwood in confidence, and with the understanding that Penwood could not use Plaintiffs' ideas, confidential information or Site Plans without compensating Plaintiffs as described above.

36. On or about June 17, 2015, in anticipation of closing escrow with Penwood on July 8th, Plaintiffs finalized and CRP I entered into an Exclusive Listing Agreement with Lee & Associates, whereby Lee & Associates became the sole agent of CRP I to begin efforts to market and list the structures that would be developed on the Grove Property.

37. Pursuant to and reliance upon this agency relationship, Comstock disclosed the Site Plan to Hill and Smith from Lee & Associates in confidence to assist them in their role to list and market the Grove Property on CRP I's behalf.

38. On or about June 19, 2015, in furtherance of the parties' understanding of becoming co-investors in the deal, Penwood issued a signed Term Sheet to Plaintiffs confirming the terms of the deal between the parties, a draft of the proposed Operating Agreement for their Joint Venture, a Development Management Agreement and a Completion Financial Guaranty Agreement to be completed and signed by Plaintiffs.

39. Comstock made it known to Penwood that Plaintiffs agreed to and accepted the terms of the signed Term Sheet, the proposed Operating Agreement, the Development Management Agreement and the Completion Financial Guaranty Agreement.

40. At that time, Plaintiffs were ready and prepared to close with Penwood on July 8th, and notified the Seller of the same.

///

<u>Defendants' Unauthorized Use of Plaintiffs' Site Plan</u>

41.     On or about July 8, 2015, the day the deal was supposed to close, Penwood abruptly informed Comstock, without any prior notice or explanation, that they would be no longer investing in the Grove Property with him. Penwood made no further contact with Comstock.

42.     Due to the fact that Penwood pulled out of the deal on the day escrow was scheduled to close, and that Plaintiffs continually relied upon Penwood's representations, conduct and assurances that they planned to invest in the deal with them, Plaintiffs had not entertained any alternative investors to replace Penwood in the deal. Plaintiffs are informed and believe, and based thereon allege that Penwood knew that its actions placed Plaintiffs in a detrimental situation.

43.     Around this same time, while Lee & Associates knew Plaintiffs were in trying to find a replacement investor, Plaintiffs are informed and believe, and based thereon allege that Hill, acting in the scope of its employment with Lee & Associates, abused his position as CRP I's agent and disclosed Plaintiffs' confidential Site Plan to another developer, Western Realco, in effort to lure and secure another buyer for the Grove Property. Such disclosure was made on or about August 28, 2015, and was made unbeknownst to Plaintiffs, without their authorization, and during the time when Plaintiffs were still in escrow with the Sellers and Lee & Associates was acting as CRP I's sole agent for the Grove Property. Plaintiffs did not discover any of these facts until February 2020 from discovery that was conducted in this case.

44.     Plaintiffs are informed and believe, and based thereon allege that, at the time of the disclosure, Hill knew that Western Realco and Penwood had a long history of looking at and developing properties together. Towards that end, Plaintiffs are informed and believe, and based thereon allege that Lee & Associates told Western Realco that Penwood had been previously involved in the Grove Property with Plaintiffs, that Plaintiffs were the developer, that Plaintiffs' Site Plan was signed off by the City and that Lee & Associates was going to be Plaintiffs' and Penwood's

listing agent for the Grove Property. Plaintiffs are further informed and believe, and based thereon allege that Lee & Associates then disclosed Plaintiffs' Site Plan to Western Realco with the hope that Penwood would get back involved in the deal with Western Realco using Plaintiffs' plans and would hire Lee & Associates as their listing agent. After Western Realco received the Site Plan from Hill, it reached out to Penwood on or about September 5, 2015, stating, "Word is you looked at Grove Avenue with Comstock…Would you guys be players if I can get control?"

45. Therefore, at or around the time Hill sent Plaintiffs' Site Plan to Western Realco, Plaintiffs are informed and believe, and based thereon allege that Western Realco knew that Penwood had been previously involved in the Grove Property with Comstock and that the Site Plan was Plaintiffs' property.

46. Thereafter, Plaintiffs fell out of contract with the Sellers because they were unable to secure replacement equity in time to close escrow. As a result, Plaintiffs' nonrefundable deposit of $500,000 was transferred to the Sellers.

47. Plaintiffs are informed and believe, and based thereon allege that as soon as Plaintiffs fell out of contract, Western Realco jumped at the opportunity to enter into a purchase and sale agreement with the Sellers to purchase the Grove Property with the intent to develop it with Penwood using Plaintiffs' Site Plan and other development plans that Penwood obtained from Plaintiffs in confidence prior to pulling out of the deal. Western did not have Plaintiffs' consent to utilize their Site Plan or development plans for the development. Plaintiffs are further informed and believe, and based thereon allege that Western Realco and Penwood intended to profit and did in fact profit from using Plaintiffs' Site Plan and development plans to develop the Grove Property without compensating Plaintiffs.

48. On or about September 21, 2015, Western Realco contacted Penwood, asking it to provide any information Penwood had on the Grove Property, including Site Plan, drawings and any other information Penwood had gleaned from Plaintiffs in confidence, so Western Realco could discuss moving forward with developing the

Grove Property together. Plaintiffs are informed and believe, and based thereon allege that, pursuant to Western Realco's request, Penwood disclosed Plaintiffs' intellectual property to Western Realco. Plaintiffs had no knowledge of any of these facts at that time.

49. At that point in time, Plaintiffs had invested well over $100,000 in the development of the Site Plan, not to mention the hundreds of hours spent developing this information.

50. Plaintiffs are informed and believe, and based thereon allege that on or about September 30, 2015, after Western Realco had possession of Plaintiffs' Site Plan, Western Realco sent Plaintiffs' Site Plan to their own architect, Bastien & Associates, Inc. ("Bastien"), to copy and utilize in Defendants' plans to develop the Grove Property. (Plaintiffs did not discover these facts until late August or early September of 2020 from discovery that was conducted in this case.) Plaintiffs are further informed and believe, and based thereon allege that Bastien did in fact copy and use Plaintiffs' Site Plan and drawings in the development of the Grove Property, thus infringing upon Plaintiffs' copyrights.

51. On or about June 2, 2018, John Cataldo, the architect who drew Plaintiffs' Site Plan and designs for the Grove Property, contacted Comstock and informed him that he drove by the Grove Property on his way to another project nearby and saw that the Grove Property had been constructed identically to Plaintiffs' Site Plan. Prior to this date, Plaintiffs had no idea or reason to believe that Penwood or Western Realco were utilizing their ideas and Site Plan to profit from the work product and investment Plaintiffs had created.

52. Comstock later confirmed this information for himself by driving by and inspecting the Grove Property. Plaintiffs are informed and believe, and based thereon allege that Defendants used Plaintiffs' Site Plan and drawings to develop the Grove Property project without Plaintiffs' consent. Defendants did not compensate Plaintiffs for the use of their plans.

53. Plaintiffs are informed and believe, and based thereon allege that Penwood and Western Realco have since sold the project for $31,024,445. Plaintiffs are informed and believe, and based thereon allege that Western Realco profited $876,277.40 and Penwood profited $5,964,506.35 as a result of developing the Grove Property using Plaintiff's architectural plans. The amount of profit Bastien made from copying Plaintiffs' plans is unknown to Plaintiffs at this time.

54. Plaintiffs are informed and believe, and based thereon allege that Plaintiffs would have made approximately $5,748,909 in profit and fees, according to the deal terms that the parties agreed upon in Penwood's Term Sheet and Joint Venture Operating Agreement, had Penwood co-invested in the project with Plaintiffs as intended and not appropriated their ideas to profit from the project with another developer.

## FIRST CAUSE OF ACTION

**(For Copyright Infringement– Plaintiffs Against Western Realco, Bastien and Penwood)**

55. Plaintiffs repeat and incorporate herein by reference all of the allegations set forth above as though fully set forth herein.

56. Plaintiffs are informed and believe, and based thereon allege that Plaintiffs own the copyrights to the Site Plan and each of its iterations.

57. Plaintiffs are informed and believe, and based thereon allege that Western Realco, Penwood and Bastien colluded together to copy Plaintiffs' Site Plan and architectural drawings to use in their (Defendants') own development of the Grove Property. On or about September 30, 2015, Western sent Plaintiffs' Site Plan to Bastien to copy and replicate. Plaintiffs are further informed and believe, and based thereon allege that Bastien did in fact copy, and/or at least substantially copied, Plaintiffs' Site Plan and used its original designs, plans and drawings to form the basis of Defendants' site plan used to develop the Grove Property. Plaintiffs are also

informed and believe, and based thereon alleges that Penwood approved and supported this plan.

58. Plaintiffs are informed and believe, and based thereon allege that Defendants copied the Site Plan and its original designs without Plaintiffs' knowledge or consent, and without compensating Plaintiffs for the use of those plans. As a result, Defendants are liable for copyright infringement.

59. Plaintiffs did not discover that Defendants copied the Site Plan until in or around June 2, 2018.

60. From on or about March 15, 2021 to March 17, 2021, Plaintiffs registered the Site Plan and its iterations with the United States Copyright Office.

61. As a direct and proximate result of Defendants' conduct, Plaintiffs have suffered actual damages in an amount according to proof at trial. Plaintiffs are informed and believe, and based thereon allege that Defendants have unjustly profited from Plaintiffs' architectural plans and thus Plaintiffs should be entitled to a disgorgement of profits.

## SECOND CAUSE OF ACTION

**(For Violation of Bus. & Prof. Code § 17200 et seq. – Against All Defendants)**

62. Plaintiffs repeat and incorporate herein by reference all of the allegations set forth above as though fully set forth herein.

63. Plaintiffs are informed and believe, and based thereon allege that Defendants have engaged in conduct that constitutes unlawful, unfair and fraudulent business practices in violation of Business & Professions Code § 17200, et seq. Specifically, Plaintiffs are informed and believe, and based thereon allege that Western Realco knowingly and willfully copied and converted Plaintiffs' architectural plans for its own use and benefit in the Grove Property development by, among other things, sending Plaintiffs' architectural plans to their own architect, Bastien, to copy and replicate. Plaintiffs are informed and believe, and based thereon allege that Penwood knew and conspired with Western Realco to use and copy

Plaintiffs' architectural plans to benefit themselves without Plaintiffs' knowledge or consent.

64. For example, on or about September 21, 2015, Western Realco contacted Penwood asking them to provide any information they had on the Grove Property, including Plaintiffs' architectural plans they had gleaned from Plaintiffs so they could discuss moving forward with developing the Grove Property together. Plaintiffs are informed and believe, and based thereon allege that, at this time, Western Realco knew that the architectural plans belonged to Plaintiffs. Plaintiffs are further informed and believe, and based thereon allege that Penwood provided the plans to Western Realco with the intent to use it for their benefit to develop the Grove Property together.

65. Plaintiffs are informed and believe, and based thereon allege that Defendants intended to and conspired together to copy Plaintiffs' plans and profit at Plaintiffs' expense without compensating them. Defendants had no right, claim or interest in the plans that they copied and used to develop the Grove Property.

66. As a proximate result of Defendants' unlawful, unfair and fraudulent conduct, Plaintiffs have suffered substantial actual losses, and Defendants have been unjustly enriched in amounts for which Plaintiffs are entitled to restitution in an amount to be proven at trial, but in no event less than $128,273.88.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs prays for judgment on their Complaint as follows:

**On the First Cause of Action for Violation of Architectural Works Copyright Protection Act**

(i) For compensatory damages according to proof;

(ii) For disgorgement of profits;

(iii) For costs of suit incurred herein; and

(iv) For such other and further relief as the Court may deem just and proper.

**On the Second Cause of Action for Violation of Bus. & Prof. Code § 17200 et seq.**

(i) For restitution;

(ii) For costs of suit incurred herein; and

(iii) For such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiffs ADRIAN COMSTOCK, COMSTOCK REALTY PARTNERS, LLC, and COMSTOCK REALTY PARTNERS I, LLC, hereby demand a trial by jury of all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.

DATED: May 27, 2021                TESSER | GROSSMAN LLP
                                    BRIAN M. GROSSMAN
                                    BETHANY R. BURRILL

                                    By: _____
                                    Bethany R. Burrill
                                    Attorneys for Plaintiffs
                                    ADRIAN COMSTOCK,
                                    COMSTOCK REALTY PARTNERS, LLC,
                                    and COMSTOCK REALTY PARTNERS I, LLC